UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Kimberli Motley-Ivey,** | : |
| Plaintiff, | : |
| v. | : Civil Action No. 09-00571 (RMC) |
| **District of Columbia** | : |
| and | : |
| **Sergeant Dale Poskus**<br>c/o MPD- Special Operations Div.<br>Harbor Patrol Unit<br>550 Water Street, SW<br>Washington, D.C. | :<br><br>:<br><br>: |
| and | : |
| **Assistant Chief Alfred Durham**<br>c/o MPD- Headquarters<br>500 Indiana Avenue, NW<br>Washington, D.C. | :<br><br>: |
| and | :<br><br>: |
| **Lt. Paul Niepling**<br>c/o MPD- Special Operations Div.<br>Harbor Patrol Unit<br>550 Water Street, SW<br>Washington, D.C. | <br>:<br><br>:<br><br>: |
| Defendants. | |
| _____ | : |

## AMENDED COMPLAINT

COMES NOW Plaintiff, through counsel, and for her Amended Complaint against the Defendants, stating as follows:

**Jurisdiction and Venue**

1. This court has original subject matter jurisdiction to hear this case and to

-2-

adjudicate the claims stated herein under 28 U.S.C. §§1331 and 1337, 42 U.S.C. §2000 *et seq.*, 28 U.S.C. §1367, and the pendent jurisdiction of this court to consider state law claims.

2. Venue is proper in this court because the alleged discriminatory and retaliatory actions were committed within the jurisdiction of the United States District Court for the District of Columbia.

### Exhaustion of Administrative Remedies

3. Plaintiff filed a timely charge of discrimination based on her gender with the Equal Employment Opportunity Commission ("EEOC") as required by 42 U.S.C. §2000e-5 and originally filed her complaint within ninety (90) days of her receipt of the Notice of Right to Sue.

4. In addition, Plaintiff cross-filed her charge of discrimination with the District of Columbia Office of Human Rights ("OHR"), Docket No. 04-432-DC (CN), which issued a probable cause finding in August 2006.

5. In March 2007 Plaintiff filed another timely charge of discrimination and retaliation with the EEOC, and now files this amended complaint within ninety (90) days of her receipt of the Notice of Right to Sue, which was issued on August 7, 2009.

### Parties

6. Plaintiff, Kimberli Motley-Ivey ("Ivey"), was hired as a patrol officer with the Metropolitan Police Department ("MPD") in 1990, and she continues to be employed by MPD.

-3-

7.   Defendant, District of Columbia, is a municipal entity that executes its governmental functions through various agencies, including its operation of a police force - the Metropolitan Police Department ("MPD"), which provides police functions throughout the District of Columbia, including along its waterways.  The Harbor Patrol Unit of the Special Operations of MPD policies all the rivers, inlets, and waterways around Washington, D.C.  The District of Columbia is responsible for the acts and/or omissions of its employees, including supervisors, under the doctrine of *respondeat superior*.

8.   Defendant, Sergeant Dale Poskus ("Poskus") is a sworn member of the MPD and, at all times relevant herein, has been one of Ivey's supervisors and an "employer" within the meaning of DCHRA, D.C. Code §2-1401.02 (10).  He is being sued in his individual capacity.

9.   Defendant, Assistant Chief Alfred Durham ("Durham"), is a sworn member of the MPD and, at certain times relevant herein, had been one of Ivey's supervisors and an "employer" within the meaning of DCHRA, D.C. Code §2-1401.02 (10).  He is being sued in his individual capacity.

10.  Defendant, Lt. Paul Niepling ("Neipling") is a sworn member of the MPD and, at certain times relevant herein, has been one of Ivey's supervisors and an "employer" within the meaning of DCHRA, D.C. Code §2-1401.02 (10).  He is being sued in his individual capacity.

-4-

## Facts

11. In 1992 Ivey competed for one of the patrol officer positions that then opened up in the Harbor Patrol unit. Around that same time, a few officers warned her about the "good ole boys" network at Harbor Patrol and that she should "watch her back" when she started working there.

12. She was awarded one of the two available positions at Harbor Patrol. However, because of a hiring freeze at the time, Officer Ivey never transferred to Harbor Patrol until 1994.

13. Harbor Patrol consists of approximately twenty (20) officers and managers under the command of the Harbor Master, and the unit has been male dominated, upon information and belief, for most of its existence.

14. When Officer Ivey arrived at Harbor Patrol in 1994 to begin her assignment, a veteran officer, Michael Curtis, warned her to lock the door whenever she was inside the women's bathroom because before her arrival male officers had deliberately walked into the women's bathroom to catch a female officer naked while she was showering.

15. Officer Curtis also told Officer Ivey that the male officers did not want female officers at Harbor Patrol, and Captain Charles Moore warned Officer Ivey that the officers are "good ole boys" and she should be careful.

16. At Harbor Patrol, Officer Ivey was initially assigned administrative tasks, including boat registration, which she did for several years. She did not begin her patrol duties on the waterways until after the boat registration duties were civilianized.

-5-

  17. Practically from the beginning of Officer Ivey's tenure at Harbor Patrol she faced a hostile working environment because of her gender, including, but not limited to the following:

  (a) her training officer, Garrett Baxter, told her that he would only talk to her if she got up on a counter and stripped naked;

  (b) male co-workers refused to speak with her;

  (c) officers spoke to her using demeaning and abusive language often laced with profanity;

  (d) officers routinely called her "stupid" and an "idiot" while male officers were not referred to in like manner;

  (e) officers would enter the women's locker room, steal personal items belonging to her and regard such actions as a joke;
isolated her from social events where her male counterparts were invited to participate;

  (f) co-workers would knowingly refuse to inform the supervisor of her whereabouts on the premises of the Harbor Patrol even though she advised them where she was going before leaving the offices;

  (g) one of her then supervisors refused to authorize the mechanic to leave open the door to the mechanic's office so that she could use that bathroom while working the midnight shift since there was no door to ladies bathroom;

  (h) falsely written up on fabricated charges and subjected to unjustified

-6-

disciplinary actions;

    (i)  officers refused to work with her on certain assignments; and

    (j)  refused to train her, and if training was offered to her it was inferior to that provided to male counterparts, thereby retarding her ability to advance in the unit.

    18.  By 1995 a Sergeant Thomas Hardy bluntly told Officer Ivey that her male colleagues did not want her at Harbor Patrol, and he insisted that she leave the unit by seeking a transfer elsewhere in MPD.

    19.  Despite Officer Ivey's several complaints to management, including Sergeant Poskus, then and Lt. Durham, and Lt. Niepling about the hostile work environment, no action was taken to rid the workplace of the discriminatory conduct.

    20.  As a result of MPD's failure to take any corrective action, in July 2004 Officer Ivey filed claims of hostile work environment discrimination based on gender with the EEOC and OHR.

    21.  Despite the OHR finding probable cause that Officer Ivey was subjected to a hostile work environment at Harbor Patrol, the discrimination and retaliation continued unabated.

    22.  Officer Ivey continued to complain to her supervisors about the discriminatory and retaliatory action, which had become obvious and widespread. However, no corrective action was taken on any of her internal complaints to management.

    23.  By March, 2007, Officer Ivey filed another complaint with the EEOC

-7-

alleging a continued pattern of hostility and retaliation, including that: she was denied the same equipment as her male co-workers, subjected to unjustified disciplinary actions, and denied certification thereby decreasing her opportunity for overtime work.

24. Officer Ivey's EEOC filings apparently seemed to embolden her MPD managers and co-workers because they continued the discriminatory and retaliatory conduct with impunity, with the approval of Poskus, Durham, and Niepling to the present time all with the apparent goal of forcing Officer Ivey to transfer voluntarily from the unit or orchestrating her termination, whichever occurs first.

25. Since 2007 to the present the acts of discrimination and retaliation perpetrated against Officer Ivey, include, but are not limited to the following:

(a) frequent target of abusive, demeaning, and hostile language laced with profanity;

(b) repeated disciplinary actions based on fabricated charges such as unauthorized use of a police vehicle, neglect of duty, failure to perform assigned duties, insubordination, willfully disobeying orders, conduct unbecoming an officer, abuse of time, etc.;

(c) Lt. Niepling cut the TV cable cord that had been in the female locker room for over 13 years but left in place the cable connections to televisions in the male locker rooms;

(d) co-workers nearly jeopardized her life one night in February 2008 when they

-8-

heard her call for help and observed her encounter problems docking her boat due to the weather, ice and wind on the slippery dock, yet refused to go to her aid;

(e) schedule shift assignment and work changes without notifying her but expecting her to comply with such changes; and

(f) issuance of poor performance evaluations to her not commensurate with her actual work performance and in violation of agency protocol and procedures.

26. In January 2008 Officer Grooms requested that Officer Ivey purchase food and cook for him. When she refused to do so, he threatened her about how more difficult he would make the workplace for her, and followed through on his threats with the approval and/or acquiescence of managers such as Poskus, Durham, and Niepling.

27. Since Officer Ivey started working at Harbor Patrol, she has been the only female officer assigned to that unit, except for two other females who had brief tenures in or around 2002 and 2004 in the unit, but they only served in administrative positions.

28. Officer Ivey reports to work each day in an intimidating and hostile work environment, fearful that she will be left stranded in a dangerous situation by her co-workers.

29. She also reports to work daily at the Harbor Patrol Unit in perpetual fear that she is going to lose her job and all the benefits of tenure because the fabricated disciplinary actions might soon result in her termination.

30. The pattern of discriminatory and retaliatory actions to which Officer Ivey

-9-

has been subjected to over the years has caused her to experience severe emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life distress, and she has been required to participate in treatment since on or about 2000 to the present through MPD's employee assistance program.

31. Defendants' foregoing actions were intentional, malicious, mean spirited, and in reckless disregard of Officer Ivey's rights under the law.

32. Defendants allowed a culture of gender discrimination and retaliation to permeate the workplace at Harbor Patrol.

**Count I – Title VII (Hostile Work Environment) (District of Columbia)**

33. Plaintiff restates the allegations set forth in paragraphs 1- 32 as if they were fully stated herein.

34. Plaintiff is a member of a protected class by virtue of her gender (female).

35. She was subjected to unwelcome harassment by Defendants as set forth above.

36. Defendant's harassment of Plaintiff was based on her gender.

37. Defendant's conduct as outlined above was unwelcome and offensive to Plaintiff.

38. Defendant's harassment of Plaintiff was severe or pervasive, rendering her work environment hostile and abusive and interfered with Plaintiff's performance of her duties and responsibilities.

39. Defendant did not exercise reasonable care to prevent and correct promptly

-10-

the harassment to which Plaintiff was subjected.

40. As a direct and proximate cause of Defendant subjecting Plaintiff to a hostile work environment she was harmed.

### Count II – Title VII (Retaliation) (District of Columbia)

41. Plaintiff restates the allegations set forth in paragraphs 1-32 as if they were fully stated herein.

42. Plaintiff engaged in protected activity when she complained about the foregoing discriminatory conduct to her supervisors and when she filed formal complaints with the EEOC and OHR.

43. As a direct and proximate result of Plaintiff having engaged in protected activities, Defendant subjected her to unjustified disciplinary action, causing her harm.

### Count III – DCHRA (Hostile Work Environment) (All Defendants)

44. Plaintiff restates the allegations set forth in paragraphs 1- 32 as if they were fully stated herein.

45. Plaintiff is a member of a protected class by virtue of her gender (female).

46. She was subjected to unwelcome harassment by Defendants as set forth above.

47. Defendants' harassment of Plaintiff was based on her gender.

48. Defendant's conduct as outlined above was unwelcome and offensive to Plaintiff.

49. Defendants' harassment of Plaintiff was severe or pervasive, rendering her

-11-

work environment hostile and abusive and interfered with Plaintiff's performance of her duties and responsibilities.

50.  Defendants did not exercise reasonable care to prevent and correct promptly the harassment to which Plaintiff was subjected.

51.  As a direct and proximate cause of Defendants subjecting Plaintiff to a hostile work environment she was harmed.

### Count IV – DCHRA (Retaliation) (All Defendants)

52.  Plaintiff restates the allegations set forth in paragraphs 1-32 as if they were fully stated herein.

53.  Plaintiff engaged in protected activity when she complained about the foregoing discriminatory conduct to Defendants and when she filed formal complaints with the EEOC and OHR.

54.  As a direct and proximate result of Plaintiff having engaged in protected activities, Defendants subjected her to unjustified disciplinary action, causing her harm.

**Count V – Intentional Infliction of Emotional Distress (Poskus, Durham & Niepling)**

55.  Plaintiff restates the allegations set forth in paragraphs 1-31 as if they were

56.   Defendants' actions against Plaintiff were extreme and outrageous.

57.   As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional distress.

-12-

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally as follows:

    a.   declaratory judgment that Defendants' acts, policies, practices and procedures complained of herein violate Plaintiff's rights as secured by Title VII and the DCHRA;

    b.   enjoin Defendants from continuing their discriminatory and retaliatory conduct against Plaintiff;

    c.   award Plaintiff compensatory and punitive damages in the amount of five million dollars ($5,000,000.00);

    d.   award Plaintiff her statutory attorney's fees and costs incurred herein; and

    e.   for such other and further relief as the Court deems just and proper.

## Jury demand

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/  Jeanett P. Henry
Jeanett P. Henry, Bar No. 411052
8701 Georgia Avenue; Suite 403
Silver Spring, MD 20910
(301) 562-1340
JHenry2085@aol.com

***Counsel for Plaintiff***

-13-

<u>Certificate of Service</u>

      I hereby certify that on this 1st day of September, 2009 a copy of this Amended Complaint was served electronically on:

David A. Jackson, Esquire
Assistant Attorney General
Office of the Attorney General
441 4th Street, NW, 6 South
Washington, D.C. 20001

                                                /s/ Jeanett P. Henry
                                                Jeanett P. Henry