UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Kimberli Motley-Ivey,           :

    Plaintiff,                  :

v.                              : Civil Action No. 09-571 (RLW)

District of Columbia, et. al.   :

    Defendants.                 :

## AFFIDAVIT OF WENDELL CUNNINGHAM

I, Wendell Cunningham, not a party to this action, and I am competent to testify to the following facts based on my personal knowledge:

1. I have been a member of the Metropolitan Police Department for over 25 years. I am currently assigned to the Emergency Response Team of the Special Operations Division ("SOD")

2. Since 2003/2004 I have been serving as Vice-Chair of the Fraternal Order of Police ("FOP"), the collective bargaining representatives for MPD members. Prior to my current position, I served as Shop Steward. In these capacities in addition to having represented members during disciplinary actions, including Officer Motley, I am also knowledgeable about the disciplinary process at MPD.

3. In 2003 while I was serving as Shop Steward at the FOP and back-up diver at Harbor, I came into contact with Sgt. Poskus who had recently been assigned to Harbor. Perhaps not realizing I was a union official at the time, he commented that when he got to Harbor he heard that every time someone tries to write-up Officer Motley, she's like Teflon, and the investigation


— P's Ex. 3

he was doing of her, he was going to make sure it goes all the way through to the end to see who would interfere. I later learned that he was investigating Officer Motley based on an allegation from Officer Anderson that he could not locate her one night to assist him on the dock. I testified at the Office of Employee Appeals hearing, which overturned the MPD's decision to suspend her for 10 days.

4. I recall Officer Motley seeking my assistance in July, 2008 when Lt. Niepling, Commander of the Harbor Patrol, ordered her to remove all electronic devices from the female locker room.

5. On July 28, 2008 I went to the Harbor Patrol to determine whether Lt. Niepling's directive also applied to the men's locker room. At that time I confirmed that Officer Motley had complied with Lt. Niepling's directive. However, a survey of the men's locker room showed that they did not receive a similar directive. The officer's personal effects were stored all over the locker room, on the floor, on top of the actual lockers, creating a fire hazard. I specifically noticed that electronic items, including TVs, were in the men's locker room.

6. The attached photographs are true and correct copies of photographs I took of the men's locker room at Harbor on July 28, 2008. *Attachment A.*

7. When Officer Motley received her 2008 performance evaluation that rated her performance as "Does Not Meet Expectations," the union intended to appeal the rating. Unfortunately, a communication breakdown in my office caused us to miss the deadline. I am confident that Officer Motley would have been successful with her appeal and her rating would have been changed at an acceptable level, as occurred with her 2003-2004 evaluation.

-3-

8. Over the years since I have been dealing with Officer Motley, I have seen the toll all the disciplinary actions have taken on her emotionally and physically, including weight changes and hair loss. I am surprised she has not had a nervous breakdown by now.

I HEREBY SWEAR AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

Dated: 12-14-12

Wendell Cunningham







